MISSOURI, K. & T. RY. CO. v. MASQUEDA.
(No. 7560.)

(Court of Civil Appeals of Texas. Dallas.
May 27, 1916. Rehearing Denied
Nov. 11, 1916.)

1. TRIAL ☞194(19)—INJURIES TO SERVANT—
INSTRUCTIONS — INVADING PROVINCE OF
JURY.
Instruction that, there being no evidence of
negligence on the master's part causing the serv-
ant's injury, the evidence showing that the
danger of injury was as obvious to the servant
as to his foreman, and the servant having as-
sumed the risk of injury, verdict should be re-
turned for the master, is properly refused as be-
ing on the weight of evidence.
[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 466; Dec. Dig. ☞194(19).]

2. TRIAL ☞252(11)—INJURIES TO SERVANT—
INSTRUCTIONS — INVADING PROVINCE OF
JURY.
Such instruction held properly refused as
unsupported by the evidence.
[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 603; Dec. Dig. ☞252(11).]

3. MASTER AND SERVANT ☞276(2), 286(40)—
INJURIES TO SERVANT—CARE OF FOREMAN—
INSTRUCTION.
Evidence held insufficient to warrant sub-
mission of issue whether foreman was negli-
gent in failing to warn servant of the danger
which caused his injuries, or to sustain finding
that the injury was the proximate result of such
alleged negligence.
[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 951, 959, 1044; Dec.
Dig. ☞276(2), 286(40).]

On Motion for Rehearing.

4. TRIAL ☞420 — MOTION FOR VERDICT —
PRESERVATION OF WAIVER.
Where the master asked peremptory instruc-
tion, which was refused, and then requested sub-
mission of issue of his negligence by a qualified
motion reciting the refusal of the peremptory
instruction, he was not precluded from assert-
ing on appeal that there was no evidence raising
the issue of his negligence.
[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 983; Dec. Dig. ☞420.]

Appeal from District Court, Dallas Coun-
ty; Kenneth Foree, Judge.

Action by Dionsio Masqueda against the
Missouri, Kansas & Texas Railway Com-
pany. Judgment for plaintiff, and defendant
appeals. Reversed and remanded. Motion
for rehearing overruled.

C. C. Huff and J. M. Chambers, both of
Dallas, for appellant. Lewis & Roark, of
Dallas, for appellee.

TALBOT, J. This is a suit brought by
the appellee against the appellant to recover
damages for personal injuries received by
him while in the employ of appellant as a
section hand. The case was submitted to a
jury upon special issues, and upon their find-
ings the trial court rendered judgment in
favor of the appellee for the sum of $500,
and the case is now before this court on ap-
peal.

The appellee was engaged in track work
under Harvey Lambert, as section foreman,
with six other men, composing the section
crew. At a point about two miles from Cad-
do, Okl., a steer, which had become frighten-
ed by an automobile at Caddo, broke away
from the herd in which it was being driven
and made its way north along defendant's
track to the place where said section crew
was at work, it having been followed by two
men on horseback, who were endeavoring to
head it and return it to the herd. Plaintiff's
evidence, which was not contradicted in any
material particular by any evidence on the
part of defendant, is substantially that as
the steer approached the place where plain-
tiff was at work, the said foreman directed
the men to drive the steer off the track,
which was upon an embankment, it appear-
ing that a passenger train was a few minutes
past due, and the foreman thought it neces-
sary for the safety of the train that the
steer be driven from the track; that in re-
sponse to the foreman's direction to head the
steer from the track, the section crew de-
ployed across the track, or rather the two
tracks which were at that place, and by ges-
tures with their tools caused the steer to
stop and turn off the tracks and go down
the embankment, leaving the tracks about
four rail lengths from the place where the
crew was working. After the steer turned
off down the embankment the crew returned
to work, and while engaged in their work
the men on horseback came on and the steer
reappeared on top of the embankment about
two rail lengths from where the crew was at
work, and made a quick run through the
men, striking plaintiff as it went through,
inflicting upon him the injuries of which he
complains. Plaintiff alleges that his injury
was the result of negligence on the part of
the defendant through its section foreman
in five particulars: (1) In permitting the ani-
mal to get upon the right of way through
inadequate fence; (2) in instructing the crew
to head off the animal, knowing it to be
vicious and dangerous; (3) in failing to warn
plaintiff of the danger incident to heading
the steer; (4) in failing to furnish plaintiff
a reasonably safe place to work; and (5)
in failing to use any care to avoid the in-
jury after discovering plaintiff's peril. It
was further alleged by plaintiff that defend-
ant and plaintiff were engaged in interstate
commerce at the time of said injury, which
allegation was admitted to be true by de-
fendant. Defendant specifically denied all
the allegations of negligence, and that plain-
tiff's injury was a proximate result thereof,
and further pleaded that the danger incident
to heading the steer was open and obvious
to plaintiff, and that plaintiff assumed all
the risk of injury from the steer.
[1, 2] When the introduction of the evi-

dence was concluded the appellant requested the court to charge the jury as follows:

"Gentlemen of the Jury: There being no evidence showing negligence on the part of defendant proximately causing plaintiff's injury, and the evidence showing that the danger of injury in heading the steer was as obvious to plaintiff as to the section foreman, and plaintiff having assumed the risk of injury by his continued effort to head the steer, after his fellow servant had failed, you will return a verdict for the defendant."

This charge was refused, and its refusal forms the basis of appellant's first assignment of error. The charge was at least in part upon the weight of the evidence and properly refused. The evidence does not, as is assumed in the charge, show conclusively that the danger of injury in heading the steer was as obvious to the appellee as to the section foreman; nor does it so show, in our opinion, that the appellee assumed the risk of injury by his continued effort to head the steer after his fellow servants had failed. There is evidence to the effect that appellant's section foreman was acquainted with the nature and disposition of that class of cattle to which the steer in question belonged, and that such a steer when gotten in a corner or pen would fight, and that appellee knew nothing whatever of the nature, disposition, and propensities of such a steer under such circumstances. There is also testimony to the effect that when the steer returned upon the railroad track, after having been driven from it by the section hands, and when within about 20 feet from appellee and his colaborers, the foreman discovered that it was going to fight, and that, notwithstanding the others escaped without injury, it was too late, when the foreman directed the section hands to leave and seek a place of safety, for appellee to avoid the attack of the animal. So that the charge as framed was not in its entirety warranted by the evidence, and should not, therefore, have been given. For the same reasons just stated the second, third, and fourth assignments of error must be overruled.

The court by issue No. 1 submitted to the jury whether Lambert in directing plaintiff and the crew on the occasion in question used ordinary care for the safety of plaintiff, and by issue No. 2 the court instructed the jury that if issue No. 1 be answered in the negative, then they should answer whether the injuries to plaintiff were the proximate result of the want of ordinary care of Lambert, if they found that he failed to use such care. The jury answered the first issue in the negative, and the second in the affirmative. The submission of these issues is complained of by appellant in its fifth and eighth assignments of error. The proposition under the fifth assignment is to the effect that the evidence was insufficient to warrant a finding that appellant's foreman, Lambert, failed to exercise ordinary care for the safety of the appellee, therefore issue No. 1 should not have been submitted to the jury, and the proposition contended for under the eighth assignment is as follows:

"The evidence conclusively showing that in obedience to the alleged negligent act of the foreman in directing the crew to head the steer the crew drove the steer from the track and down the embankment, and afterwards, at the suggestion of the foreman, returned to their track work, and that subsequently the steer slowly returned to the track, and, discovering the horsemen rapidly approaching, turned and ran through the crew, striking and injuring plaintiff, all of which occurred wholly independent of any action of the foreman other than his effort to get the men out of the way of the steer, the finding of the jury that the injury was the proximate result of the alleged negligence of Lambert is without evidence to support it."

[3] These assignments, we think, are well taken. The testimony in reference to the care used by appellant's foreman Lambert for the safety of appellee, and upon the question of whether the direction given by said foreman to appellee and his colaborers to head the steer and drive him from the railroad track was negligence and proximately resulted in the injuries received by appellee, is that of the witnesses Lambert, Espinoza, and the appellee himself. The witness Lambert testified in this connection:

"I told the men we would have to run it [the steer] off the right of way when it got close to us. We were running it off the track. We had a train due there at that time, and I was afraid it would cause an accident, and so we ran it off. The animal remaining on the track might have wrecked the train. When I instructed the men to head it off, they carried out my instructions. When I discovered that the steer was going to fight, I was 12 or 15 feet from the plaintiff. The steer was about 20 feet from him. The only effort I made to prevent him from getting hurt was to holloa to him to run. We all made motions at the animal to scare it away. I holloaed for them to run, and then I ran and turned around and saw him standing there, and then I called again to him to run. I don't know that he understood me, but he could see everybody else running."

Espinoza testified that when the foreman told the men to chase the steer off the track the steer left the track and the foreman told the men to go back to work, which they did. At that time the men on horseback made the steer come up on the track again, and when it got back it was so close to the place where the men were working that they saw the danger and tried to escape, but it was too late. The foreman gave the order for the men to leave and get in a safe place, but it was too late, and in that minute the steer caught the man and hurt him. He further stated that when the steer went back on the track the foreman told the men to get out of the way, but it was too late; that the steer was about four rails from them when he first turned off the track and went down the embankment. The appellee testified:

"When the foreman told us to head off the steer, we were all standing in line and the animal went down the embankment. That was probably two rails from us. The men then went back to work. The horsemen were about four poles from the steer when it went down the

embankment. They were probably half that distance from the steer when it came back up on the track. The men were riding up on top of the embankment between the two tracks. The men were running their horses. The steer was going very slowly when it came up on the embankment. We stopped working when it came back up and when the animal came up to where we were he turned."

The witness further stated the animal saw the horsemen and ran in an opposite direction (from the horsemen) to where the men were working, and that the men were working at that time. He stated:

"The horsemen ran the steer through the gang of men—that is the way it was. The horsemen ran the steer through the crowd. When the horsemen ran the steer through the crowd, the men were at work."

This testimony was practically undisputed and insufficient to authorize and sustain the jury's finding to the effect that the appellee's injury was the proximate result of negligence on the part of appellant or its foreman, Lambert. It fails to show that appellee suffered any injury as a result of his efforts to drive the steer from appellant's track in obedience to the instructions given by the foreman, Lambert. On the contrary, it appears therefrom that the object and purpose of the instruction had been accomplished without injury to appellee, and that whatever injury he sustained was received after such danger as he may have been exposed to by the instruction of the foreman to drive the steer from the track had ceased and he and his colaborers had returned to work and were proceeding in the usual way in the performance of their duties. When the steer went upon the track the second time the instruction to drive him from it was not repeated, but on the contrary the section men, as soon as the foreman discovered indications of danger from the appearance and action of the steer, were told to run to a place of safety. The evidence further shows that after the steer had been driven from the railroad track and had again gone upon it, the men on horseback, who were endeavoring to drive him back to the herd, came rapidly up, and that the steer then rushed through the section men and injured the appellee. Thus it appears, we think, that the cause of appellee's injury was independent of the instruction of the foreman. So that, the evidence being as related, it cannot be said, we think, that the instruction of the foreman in the first instance to drive the steer from the track was the proximate cause of appellee's injury, or that said foreman failed to exercise ordinary care for the safety of the appellee.

There are several assignments of error which have not been discussed because we deem it unnecessary to do so. What we have said disposes of the controlling questions arising on this appeal, and for the reasons stated the judgment of the court below will be reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

[4] We have carefully considered the appellee's motion for a rehearing, and conclude that it presents no good reason for a change of the views expressed in our original opinion. That opinion is not, we believe, in conflict with cases cited by appellee. The contention to the effect that the appellant having asked that the question of the negligence of its foreman be submitted to the jury and having invited an answer upon the issue as to the cause of appellee's injury, it cannot be heard to say there was no evidence to support those issues, is not sound. The appellant not only requested the trial court to direct the jury to return a· verdict in its favor on the ground that there was no evidence showing negligence on its part proximately causing appellee's injury, but in asking the submission of issues used the following language:

"The court having refused defendant's special charge No. 1 (which was the peremptory instruction asked), the defendant, without admitting that there are any issues of fact that should be submitted, requests that if issues of negligence be submitted they be submitted in the following form."

Then follow the issues requested to be submitted. Having requested a peremptory instruction and having qualified its requests for the submission of the issues presented in the manner stated, appellant did not preclude or estop itself from asserting and insisting on appeal to this court that there was no evidence raising such issues. The rule that where a party unqualifiedly requests the submission of an issue it will not be heard to say on appeal that the issue was not raised by the evidence, is not applicable in such a case.

The motion for rehearing is overruled.